IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,** | § § § § | **CIVIL ACTION 6:20-cv-00539-ADA** |
| *Plaintiff,* | § § | |
| v. | § § | |
| **HUAWEI TECHNOLOGIES USA INC. ET AL.,** | § § § | |
| *Defendant.* | § | |

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF
ADDRESSING CLAIM 15 OF U.S. PATENT NO. 8,200,224**

**I.      Dependent claim 15 does not invoke the mixed class concerns of *IPXL***

Huawei failed to meet its burden to prove, by clear and convincing evidence, that claim 15 is invalid for allegedly mixing classes of subject matter under the reasoning in *IPXL Holdings v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) ("*IPXL*").[1]  *IPXL* ruled that "a single claim covering both an apparatus and a method of use of that apparatus is invalid" as indefinite (under § 112, ¶ 2).  *Id*. at 1384.  Claim 15, reproduced below, does not invoke this same concern.

> 15. The method of claim 1 implemented in a computer program product stored on a storage medium, comprising executable program means for causing a base station to perform the method when the program is run on the base station.

U.S. Patent No. 8,200,224 ("the '224 patent"), 10:58–61 (claim 15).  Unlike *IPXL*, claim 15 does not cover an apparatus and a method of use of that apparatus.  Rather, claim 15 recites that the method steps of claim 1 must be performed with certain structure.  This is a proper and long-recognized limitation on the scope of a method.  *See* Robert A. Matthews, Jr., Annot. Patent Digest § 3:53 (2021) (collecting cases).[2]

Huawei has not cited any Federal Circuit case law in which the court invalidated a dependent claim because it recited structural limitations on its independent method claim.  To the contrary, Federal Circuit authority indicates that such dependent claiming is permissible.  In *Akamai*,[3] for example, the court explained that "[m]ethod claims often include structural details" in holding that the district court's claim construction properly included a structural element as a limitation in a method claim.  *Id*. at 1329–30.

---

[1] Prior to the Court raising this issue *sua sponte*, Huawei had waived the right to pursue this invalidity theory by failing to preserve the same in its invalidity contentions and briefing.

[2] Judges from the Federal Circuit and the federal district courts have quoted from and relied on Matthew's Annotated Patent Digest in rendering rulings on dozens of patent matters. *See, e.g.*, *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1358 (Fed. Cir. 2017) (Reyna, *dissenting-in-part*); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1318, 1321−22, 1327, 1330 (Fed. Cir. 2014); *Leviton Mfg. Corp. v. Universal Security Instruments, Inc.*, 606 F.3d 1353, 1373 (Fed. Cir. 2010) (Prost, J., *dissenting*); *Motiva Patents, LLC v. Sony Corp.*, 2019 WL 4737051, *5 (E.D. Tex. Sep, 27, 2019).

[3] *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010), *vacated on other grounds*, 419 Fed. Appx. 989 (Fed. Cir. 2011).

Similarly, *in Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374–75 (Fed. Cir. 2008), the court found that a method claim was not invalid for impermissibly claiming mixed classes of subject matter even though the claim included structural limitations. As the court explained in *Microprocessor*, "Method claim preambles often recite the physical structures of a system in which the claimed method is practiced." *Id*. at 1375; *see also Seachange Int'l, Inc. v. C–COR Inc.*, 413 F.3d 1361, 1375–76 (Fed. Cir. 2005) (holding that the phrase "distributed computer system" in preamble of a method claim was a claim limitation); *Eaton Corp. v. Rockwell Intern. Corp.*, 323 F.3d 1332, 1342 (Fed. Cir. 2003) (construing a method claim as including steps that require the operation or manipulation of recited structure).

Finally, in *SunRace Roots Enterprise Co. v. SRAM Corp.*, 336 F.3d 1298 (Fed. Cir. 2003), the Federal Circuit discussed a dependent claim that added a "structural limitation" to the independent method claim. *Id*. at 1303. The court's discussion did not question the validity of the dependent claim even though that claim "simply add[ed] the structural limitation" to the method claim. *Id*.

Confronted with analogous facts, another court presented a similar analysis of the Federal Circuit authority addressed above. *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 809 F. Supp. 2d 863, 881–82 (N.D. Ill. Aug. 17, 2011). There, the court cited much of the same authority as reaffirming it is permissible to limit method claims to performance with certain structure. The court thus upheld the definiteness of dependent claims that only added structural limitations to a method claim. *Id*. Other courts have applied similar reasoning. *See, e.g.*, *Steuben Foods, Inc. v. Oystar USA, Inc.*, No. 1:10-CV-00780 EAW, 2021 WL 630906, at *3 (W.D.N.Y. Feb. 18, 2021) (instructing that "*IXPL Holdings* is not implicated where a method claim 'recite[s] the physical structures of a system in which the claimed method is practiced'") (quoting *Microprocessor*, 520 F.3d at 1374); *Optimum Imaging Techs. LLC v. Canon Inc.*, No. 2:19-CV-00246-JRG, 2020 WL 3104290, at *24 (E.D. Tex. June 11, 2020) (finding *IPXL* was not invoked by the recitation of structure which "permissibly sets forth the environment and context of the [claimed] method."). Analogous reasoning refutes Huawei's deficient indefiniteness theory here.

In its supplemental brief, Huawei incorrectly interprets claim 15 as being "written in apparatus format, indicating *capability* to perform the claimed method in addition to *active performance* of the method recited in Claim 1." Dkt. 64 at 3. Huawei is wrong. Claim 15 recites at the outset "[t]he *method* of claim 1 . . ." and thus it clearly is written in method form. '224 patent, 10:58–61. The remainder of claim 15 is not satisfied by mere *capability* but rather limits *the performance* of claim 1 to certain structure—i.e., ". . . implemented in a computer program product stored on a storage medium, comprising executable program means for causing a base station to perform the method when the program is run on the base station." As explained above, the Federal Circuit (and numerous progeny cases) has made it clear that the concern identified in *IPXL* is not implicated where, like here, a method claim recites structure in which the claimed method *must be implemented*. *See*, *e.g.*, *Microprocessor*, 520 F.3d at 1374. Because claim 15 would be infringed only by "practicing the claimed method . . . [using] the requisite structure," *id*. at 1375, the ambiguity driving the analysis in *IPXL* is simply not present.[4]

## II.     Dependent claim 15 recites sufficient structure to avoid § 112, ¶ 6

The Court also invited the parties (through e-mail dated April 27, 2021, from Dr. Joshua Yi, Technical Advisor to the Hon. Alan D. Albright, United States District Court – Western District of Texas) to further brief "Whether the claim term is subject to Section 112, Paragraph 6 given that the base station performs the method of Claim 1 and may also provide sufficient structure to overcome the presumption that 112, 6 applies." The Court's "given that" statement correctly recognizes that claim 15 expressly requires the base station to perform the method of claim 1. *See* '224 patent, 10:60–61 (claim 15). This recitation of definite structure, and the *additional* structural context in which it is recited, does indeed overcome the presumption that § 112, ¶ 6 applies.

As explained above, dependent claim 15 recites that the method of claim 1 must be performed with certain structure—*e.g.*, ". . . a base station to perform the method when the program is run on the base station." Sufficient structure is recited as (1) the *executable program*

---

[4] Huawei purports to also challenge dependent claim 14 under *IPXL*. The Court did not grant leave for Huawei to newly address claim 14; and Huawei has waived such a challenge. *See* n.1, *supra*.

3

that must be run on (2) *the base station*, where the executable program must itself contain (3) specific *algorithm structure* (i.e., the process steps of claim 1). These three structural elements, when collectively considered, are sufficient to overcome the presumption that § 112, ¶ 6 applies.

First, claim 15 recites corresponding structure as an "*executable program*" of a "computer program product *stored on a storage medium*." Courts have repeatedly found that the term "executable program" itself connotes structure, particularly when embodied "on a storage medium." Dkt. 43 (Op. Br.) at 6 (collecting cases).

Second, there is also precedent for the conclusion that the term "'base station' possessed a well defined meaning in the art connoting structure." *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 741 F. Supp. 2d 783, 794 (E.D. Tex. Aug. 11, 2010) ("*EON*"). The court in *EON* quoted multiple dictionary definitions in support of its interpretation that "base station" connotes structure. *Id*. at 793. The court also found the dictionary definitions to be "consistent with the applicant's use of the term throughout the specification. *See*, *e.g.*, '101 Patent at 3:32–4:6 (describing the base station as transmitting and receiving messages to and from subscriber units)." *Id*. Here, the '224 patent similarly confirms the understanding that "base station" *itself* connotes structure, including by stating "[t]he term 'base station' as used herein refers to any type of fixed network element capable of exchanging data with a user equipment." '224 patent, 2:13–15. As explained above, claim 15 structurally limits the method of claim 1 in that it requires *the base station to perform that method*, as the Court correctly recognized (in its e-mail concerning supplemental briefing).

Finally, claim 15 also recites *algorithmic structure* by expressing the "method of claim 1" as certain process steps which the executable program, when run on the base station, must cause the base station to perform. This multi-part combination of structure, including (1) the *executable program* running on (2) *the base station*, where the executable program must itself contain (3) specific *algorithm structure* recited as the process steps of claim, is sufficient to overcome the presumption that § 112 ¶ 6 applies to this term. *See* Dkt. 46 at 5 (collecting cases).

As explained in WSOU's briefing, Huawei has tacitly acknowledged claim 15 recites sufficient structure corresponding to the disputed "means for" term. *Id*.; *see also* Dkt. 43 (Op. Br.)

4

at 5–7.  Huawei's original means-plus-function construction identified as corresponding structure the "base station" *expressly recited in claim 15*.  Dkt. 43 (Op. Br.) at 4–5 (reproducing Huawei's original position, as disclosed by Huawei prior to the filing of the opening brief).  Huawei offered no explanation in its briefing for why it abandoned its prior position that the recited "base station" is *itself* corresponding structure.  It is also independently significant that Huawei still maintains the flowchart 100 of Figure 1 is corresponding structure.  *Id.*; *see also* Dkt. 45 (Resp. Br.) at 10.  This is because the same language is stated verbatim in *both* the description of the steps set forth in the flowchart 100 of Figure 1 *and* the steps recited in claim 1, which claim 15 expressly requires the "base station to perform . . . when the program is run on the base station."  '224 patent, 10:60–61 (claim 15).  This overlap is underscored by a side-by-side comparison of claim 1 and flowchart 100, which are both reproduced in Table 1, *infra*, with identical language highlighted.  If corresponding structure is found in the flowchart 100 of Figure 1, as Huawei contends, then the disputed term *admittedly* avoids § 112, ¶ 6.  This is because claim 15 recites this same structure, including in its requirement that "*the method of claim 1*" must be "*run on the base station*."

Huawei argues in its supplemental brief that, *if* this term is subject to § 112, ¶ 6, "the corresponding structure for the means term above cannot be the base station alone."  Dkt. 64 at 4.  This is neither the question the Court invited the parties to brief nor even a dispositive issue here.  The Court asked the parties to address *whether* § 112, ¶ 6 is invoked, given that the recited "base station" *also* provides necessary structure for the claimed method implementation.  Huawei does not dispute, and has advanced no evidence to refute, the understanding that (1) "base station" connotes structure to a person of ordinary skill in the art and (2) that the claimed implementation requires *at least* a base station.  That claim 15 further recites other structural limitations, *in addition to* the "base station" requirement, only further confirms § 112, ¶ 6 is not invoked here.

**TABLE 1**

| Steps of the method of claim 1 are reproduced below, which claim 15 requires "a base station to perform . . . when the program is run on the base station." | Steps of Fig. 1 of '224 patent |
|---|---|
| receiving a first measurement report from said user equipment via said telecommunication link, said first measurement report containing an evaluation of signal quality from at least one candidate base station of said plurality of base stations for a handover; | Step 101: Receiving a first measurement report |
| selecting a first candidate base station using said evaluation of said signal quality from said first measurement report; | Step 102: Selecting a first candidate base station |
| initiating a first handover preparation by transmitting a first request to said first candidate base station; | Step 103: Initiating a first handover preparation |
| determining if said first handover preparation has failed; | Step 104: Determining if said handover preparation has failed |
| selecting a set of candidate base stations including … some of said candidate base stations identified in said first measurement report; | Step 105: Selecting a set of candidate base stations |
| initiating a second handover preparation by transmitting a second handover request to a plurality of said set of candidate base stations, if said first handover preparation has failed; | Step 106: Initiating a second handover preparation |
| selecting a target base station from said set of candidate base stations, if said second handover preparation has not failed; | Step 107: Selecting a target base station |
| initiating said handover of said user equipment from said base station to said target base station; | Step 108: Initiating the handover of the user equipment |

*Compare* '224 patent at 10:58–61 (claim 15) *with id*. at Fig. 1 (highlighting added).

Dated: May 7, 2021

Respectfully submitted,

By:  /s/ Ryan S. Loveless
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeff Huang
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249

Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jeff@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on May 7, 2021.

*/s/ Ryan S. Loveless*
Ryan S. Loveless